# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PATRICIA RECORD, | No. 4:19-CV-00370 |
| Plaintiff, | (Judge Brann) |
| v. | |
| MAYBROOK-P ORANGEVILLE OPCO, LLC, | |
| Defendant. | |

## MEMORANDUM OPINION

### OCTOBER 6, 2020

This is a case of employment discrimination brought under federal law and predicated on this Court's federal question jurisdiction. On March 4, 2019, Plaintiff, Patricia Record ("Record"), filed a complaint against Defendant, Maybrook-P Orangeville Opco, LLC ("Maybrook"), for violating the Americans with Disabilities Act ("ADA"). Specifically, Record raised discrimination, failure to accommodate, and illegal retaliation claims against Maybrook. Following the close of discovery, Maybrook filed a timely motion for summary judgment against Record.

The motion is now ripe for disposition; for the reasons that follow, Maybrook's motion for summary judgment is granted.

## I. STANDARD OF REVIEW

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose."[1]  Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] "Facts that could alter the outcome are 'material facts,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[3] "A defendant meets this standard when there is an absence of evidence that rationally supports the plaintiff's case."[4] "A plaintiff, on the other hand, must point to admissible evidence that would be sufficient to show all elements of a *prima facie* case under applicable substantive law."[5]

"The inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits."[6]  Thus, "if the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based

---

[1] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).
[2] Fed. R. Civ. P. 56(a).
[3] *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993) (Hutchinson, J.) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) and *Celotex*, 477 U.S. at 322).
[4] *Clark*, 9 F.3d at 326.
[5] *Id*.
[6] *Liberty Lobby, Inc.*, 477 U.S. at 252.

on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented."[7] "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."[8] "The judge's inquiry, therefore, unavoidably asks . . . 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'"[9] The evidentiary record at trial, by rule, will typically never surpass that which was compiled during the course of discovery.

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."[10]  "Regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates

---

[7] *Id.*
[8] *Id.*
[9] *Id. (quoting Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. 442, 447 (1871)).
[10] *Celotex*, 477 U.S. at 323 (internal quotations omitted).

that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."[11]

Where the movant properly supports his motion, the nonmoving party, to avoid summary judgment, must answer by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[12]  For movants and nonmovants alike, the assertion "that a fact cannot be or is genuinely disputed" must be supported by: (i) "citing to particular parts of materials in the record" that go beyond "mere allegations"; (ii) "showing that the materials cited do not establish the absence or presence of a genuine dispute"; or (iii) "showing . . . that an adverse party cannot produce admissible evidence to support the fact."[13]

"When opposing summary judgment, the non-movant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'"[14]   Moreover, "if a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."[15] On a motion for summary judgment,

---

[11]   *Id.*
[12]   *Liberty Lobby*, 477 U.S. at 250.
[13]   Fed. R. Civ. P. 56(c)(1).
[14]   *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2003) (Weis, J.).
[15]   Fed. R. Civ. P. 56(e)(2).

"the court need consider only the cited materials, but it may consider other materials in the record."[16]

Finally, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."[17] "There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[18] "If the evidence is merely colorable . . . or is not significantly probative, summary judgment may be granted."[19]

## II.  BACKGROUND[20]

### A.  Record's Employment with Maybrook

Record was hired by Maybrook, a health and rehabilitation center, in March 2014 as an Activity Aide.[21] During its pre-employment medical screening, Maybrook discovered that Record suffered from Coronary Artery Disease.[22] However, concluding that Record would be able to perform the core duties of an Activity Aide, Maybrook hired her.[23] These duties included "ensuring that the

---

[16] Fed. R. Civ. P. 56(c)(3).
[17] *Liberty Lobby*, 477 U.S. at 249.
[18] *Id*.
[19] *Id*. at 249–50 (internal citations omitted).
[20] These serve as the undisputed facts drawn from the parties' statements of material facts, affidavits, and exhibits. They are recounted in the manner most favorable to Record, who is the party opposing summary judgment.
[21] Doc. 18 at ¶ 1; Doc. 21 at ¶ 1.
[22] Doc. 18 at ¶ 8. Neither party disputes that Coronary Artery Disease can constitute a disability under the ADA.
[23] *Id.*

emotional, recreational, and social needs of the residents are met and maintained on an individual basis," as well as being responsible for other tasks like mail delivery and accompanying residents outside for smoke breaks.[24]  Beyond these responsibilities, Activity Aides are expected to "refrain from engaging in inconsiderate and/or disrespectful conduct towards others."[25]

Prior to her termination, Record was disciplined by Maybrook seven times. In September 2015, Record was counseled for leaving residents unattended during their smoke breaks.[26]  Later that year, she agreed to attend sensitivity training after several resident reports led to an investigation against Record.[27]  A month later, Record received a written warning for her "job performance, attitude, and [disrespectful] treatment of others in the facility."[28]  In December 2015, Record was suspended for failing to adequately supervise residents, which resulted in one resident striking another.[29]

In February 2018, Record received a written warning for forgetting to take residents outside for their scheduled smoke breaks.[30]  Later that month, Record was issued another written warning after a volunteer claimed that Record was "rude and made her feel uncomfortable."[31]  Then, in May 2018, Record received yet

---

[24]  *Id.* at ¶¶ 6-7.
[25]  *Id.* at ¶ 13.
[26]  *Id.* at ¶¶ 18, 21.
[27]  *Id.* at ¶ 25.
[28]  *Id.* at ¶¶ 31-32.
[29]  *Id.* at ¶ 34.
[30]  *Id.* at ¶¶ 36-37.
[31]  *Id.* at ¶ 39.

another written warning for making the daughter of a resident cry.[32]  Finally, Record was suspended on August 23, 2018 after Maybrook received reports that Record "continued to be disrespectful to residents," would yell at residents, and sometimes used foul language when doing so.[33]  Record was ultimately terminated four days later on August 27, 2018.[34]  In the reports prepared by Maybrook, Record contested and challenged the basis for all of the disciplinary actions taken against her in 2018, including the suspension which resulted in her termination.[35]

Throughout her employment, Maybrook did not receive any requests from Record to change or modify her responsibilities as an Activity Aide to accommodate her disability (Coronary Artery Disease).[36]  Record does not allege that any Maybrook employees made disparaging remarks about her disability and does not offer any details regarding her termination beyond the disciplinary reports prepared by Maybrook.

---

[32] *Id.* at ¶¶ 40-41.
[33] *Id.* at ¶ 43.
[34] *Id.* at ¶ 46.
[35] Doc. 21-4 at 2-4.
[36] Record argues that there is a genuine dispute as to whether she requested Maybrook to accommodate her disability.  But because Record supports this allegation only by citing to her complaint, a near-identical complaint filed with the Equal Employment Opportunity Commission, and an interrogatory citing to her complaint, she has failed to meet her evidentiary burden of establishing the existence of a genuine dispute.  Doc. 21-1; Doc. 21-2; Doc. 21-3; *see* Fed. R. Civ. P. 56(c)(1) ("[I]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion.").  Consequently, this Court will consider it undisputed that Maybrook did not receive a request from Record to accommodate her disability.

Following her termination, Record filed a charge with the Equal Employment Opportunity Commission ("EEOC") on January 17, 2019 alleging her supervisor at Maybrook discriminated against her in violation of the ADA.[37] She subsequently filed the complaint in the present case on March 14, 2019.[38] The complaint alleged that secondhand smoke that Record was exposed to while supervising residents aggravated her disability.[39] She claimed that she asked her supervisor if she could observe residents' smoke breaks from inside a glass door, but that her supervisor refused.[40] Additionally, Record alleged that she was disciplined for supervising residents from behind a glass door and that she repeatedly told employees at Maybrook that second hand smoke was aggravating her health condition.[41]

### B. Record's Witness Statements

Record introduces two affidavits from former Maybrook employees.[42] The first affidavit is from Karen Relyvelvd, a friend and former co-worker of Record who worked as a housekeeper at Maybrook between 2016 and 2018.[43] Relyvelvd

---

[37] Doc. 21-2 at 3. The allegations in this charge essentially mirror those made in the complaint. *Id.* Record also filed a charge with the Pennsylvania Human Rights Commission on October 9, 2018, however, information regarding the disposition of that charge is not included in the record. *Id.*
[38] Doc. 1.
[39] *Id.* at ¶ 17.
[40] *Id.* at ¶ 18.
[41] *Id.* at ¶ 19.
[42] Doc. 21-2 at 4-5. It is unclear whether these affidavits were submitted with Record's EEOC charge or whether they were first introduced in connection to this case. Regardless, the Court will consider them as evidence for purposes of this motion.
[43] *Id.* at 4.

states that she never personally witnessed Record neglecting any residents.[44] Further, despite working in a different department, Relyvelvd saw Record being exposed to secondhand smoke while supervising residents outside on their smoke breaks.[45] At some point between 2016 and 2018, Record told Relyvelvd that the "secondhand smoke she was exposed to [while supervising residents outside] irritated her lungs and caused difficulties in her breathing."[46] It is not clear, however, at what time or under what circumstances this statement was made. Throughout this time period, Relyvelvd also observed Record occasionally supervising residents' smoke-breaks from inside a glass door without any issues or problems arising.[47]

The second affidavit is from Scott Lamerand, a former employee who worked at Maybrook from Fall 2014 through Fall 2016.[48] Lamerand did not personally know Record, and his affidavit primarily serves to detail certain management practices that he witnessed while employed at Maybrook.[49] His affidavit implicates two Maybrook employees: Denise Whitmire, the Director of

---

[44] *Id.*
[45] *Id.*
[46] *Id.* Because this statement is not dispositive for the present motion, the Court does not address whether it constitutes hearsay and would thus be excluded from consideration for purposes of a motion for summary judgment. *Fraternal Order of Police, Lodge 1 v. City of Campden*, 842 F.3d 231, 238 (3d Cir. 2016) ("The rule in this Circuit is that hearsay statements can be considered on a motion for summary judgment if they are capable of being admissible at trial.") (quoting *Steelwagon Mfg. Co. v. Tarmac Roofing Sys.*, 63 F.3d 1267, 1275 n. 17 (3d Cir. 1995)).
[47] *Id.*
[48] *Id.* at 5.
[49] *Id.*

Nursing, and Loree Lovulis, the Nursing Home Administrator.[50] Lamerand states that Whitmire had a practice of encouraging "problem employees" (i.e., employees that Whitmire did not like) to quit by increasing or changing their responsibilities.[51] This was sometimes accomplished by "moving ["problem employees"] to assignments which would aggravate a medical condition that the individual requested an accommodation for."[52] Lamerand further attests that Lovulis approved of this practice.[53]

Additionally, on several occasions, Lamerand observed Whitmire alter or delete incident reports or nursing notes that Lamerand had written "in order to protect the facility from liability."[54] But when Lamerand raised apprehensions about these practices with Loree Levulis, she told him that "it was not [his] concern."[55] According to Lamerand, Levulis failed to take any action to remedy the situation. Lamerand also asserts that Levulis would sometimes discipline employees without providing them with documentation of their charges, and would

---

[50] *Id.*
[51] *Id.*
[52] *Id.* Lamerand asserts that Whitmire would also move employees into new and unfamiliar assignments or give them impossibly high workloads. *Id.* The purpose of this was to encourage employees to quit so that Maybrook would not have to pay unemployment benefits if the employee was terminated. *Id.*
[53] *Id.*
[54] *Id.* It is unclear what form of liability Lamerand is referring to.
[55] *Id.*

write that the employee "refused to sign" the disciplinary report even though they were unaware of the nature of what they were being charged with.[56]

## III. DISCUSSION

### A. Discrimination

Maybrook is entitled to summary judgment as to Record's discrimination claim. Record's claim, raising only circumstantial evidence of discrimination, falls under the *McDonell Douglas* burden shifting framework.[57] Under this framework, plaintiffs must first establish a prima facie case of discrimination.[58] If the plaintiff can do so, the employer then must articulate (and provide evidence to support) a legitimate, nondiscriminatory reason which, "taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action."[59] "If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted."[60] "The plaintiff then has 'the full and fair opportunity to demonstrate,' through presentation of his own case . . . 'that the proffered reason was not the true reason for the unemployment decision.'"[61]

To establish a prima facie case of discrimination under the ADA, a plaintiff must show: "(1) he is a disabled person within the meaning of the ADA; (2) he is

---

[56] *Id.* It is unclear whether employees simply refused to sign their disciplinary reports or whether Levulis would write this before an employee had a chance to respond.
[57] 411 U.S. 792 (1973). Doc. 20 at 7; Doc. 22 at 2.
[58] *McDonell Douglas*, 411 U.S. at 802.
[59] *St. Marty's Honor Center v. Hicks*, 509 U.S. 502, 509 (1993).
[60] *Id.* (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 255 (1981)).
[61] *Id.* (quoting *Burdine*, 450 U.S. at 256).

otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination."[62]

Maybrook concedes the first two elements have been satisfied but contests the third.[63]  It argues that summary judgment is appropriate because no reasonable jury could find that Record has established even a prima facie showing that her termination was the result of discrimination.  This Court agrees.

Record has entirely failed to produce any evidence supporting a claim of discrimination.  Her entire claim is premised on the theory that she requested a reasonable accommodation and was subsequently fired.  But despite having ample time for discovery, Record was unable to produce any evidence that she ever requested a reasonable accommodation.  Beyond allegedly requesting a reasonable accommodation, Record does not point to any other action taken by a Maybrook employee that would suggest she was discriminated against.[64]

---

[62] *Williams v. Philadelphia Housing Authority Police Dept.*, 380 F.3d 751, 761 (3d Cir. 2004), *superseded by statute on other grounds* (quoting *Taylor v. Phoenixville School Dist.*, 184 F.3d 296, 306 (3d Cir. 1999)).

[63] Doc. 20 at 9.

[64] Record does not, for example, allege that a Maybrook employee made comments about her health condition or that her supervisor made any explicit statements prior to terminating her that would constitute discrimination.  Additionally, Record might have attempted to substantiate the allegations made in her complaint by, among other things, deposing relevant Maybrook employees or soliciting additional witnesses with personal knowledge of the alleged discrimination.  But she decided not to do that and instead rests her case entirely on the pleadings.  This is simply not enough to survive summary judgment.

Moreover, the evidence actually within the record is also of no avail. Relyvelvd's affidavit avers only that Record was exposed to secondhand smoke and that it may have impacted her health. But Relyvelvd does not claim to have personal knowledge of any discrimination against Record. She does not recount any statements made between Record and her supervisors or claim to have any knowledge of the specifics regarding Record's termination.

In contrast, Lamerand's affidavit could provide some circumstantial support to Record's claim. However, Record has not introduced any evidence connecting the general practices described by Lamerand to a discrete incident of discrimination against Record. As it stands, Lamerand's claims that Whitmire and Levulis had a practice of exacerbating employees' disabilities is not specific enough to establish that Record was in-fact discriminated against.

No reasonable jury could find for Record on these facts. Consequently, Record's discrimination claim is dismissed.

### B. Failure to Accommodate

Maybrook is also entitled to summary judgement as to Record's failure to accommodate claim. The ADA specifically provides that an employer discriminates against an employee when it does not "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified [employee]."[65] To succeed on a failure to accommodate claim, a plaintiff

---

[65] 42 U.S.C. § 12112 (2009).

must show: "(1) that the employer is subject to the statute under which the claim is brought; (2) that she is an individual with a disability within the meaning of the statute in question; (3) that, with or without reasonable accommodation, she could perform the essential functions of the job; and (4) that the employer had notice of the plaintiff's disability and failed to provide such accommodation."[66]

Record's claim cannot survive summary judgement because she has failed to produce evidence that she ever requested a reasonable accommodation from Maybrook.  Because there is no other evidence that would support her allegations, Record's failure to accommodate claim is dismissed.

### C.     Illegal Retaliation

Finally, Maybrook is entitled to summary judgment on Record's illegal retaliation claim.  To establish a prima facie case of illegal retaliation, a plaintiff must show: "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action."[67]

Like her failure to accommodate claim, Record's illegal retaliation claim fails because she has not produced evidence that she requested a reasonable accommodation or engaged in other protected activity.  Moreover, she has not

---

[66] *Kralik v. Durbin*, 130 F.3d 76, 78 (3d Cir. 1997) (citing *Helen v. DiDario*, 46 F.3d 325, 331 (3d Cir. 1995)).
[67] *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997).

offered specific details or information explaining the circumstances regarding her firing, and has not submitted affidavits or testimony that would suggest her termination was retaliatory.  Her illegal retaliation claim is thus dismissed.

## IV. CONCLUSION

Because Record has failed to produce evidence sufficient to survive a motion for summary judgment for any of her claims, Maybrook's motion is granted in its entirety.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge
